IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**CALEB BROWN**                                                                         **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 2:22-cv-155-KS-MTP**

**THE ESAB GROUP, INC.,**
**ENOVIS CORPORATION**
**(Formerly COLFAX CORPORATION);**
**and JOHN DOE BUSINESS 1-5**                                     **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This cause comes before the Court on the Motion to Dismiss [5] filed by the Defendants, The ESAB Group, Inc. ("ESAB") and Enovis Corporation ("Enovis/Colfax"). The motion is fully briefed and ripe for ruling. Having reviewed the parties' submissions, the relevant legal authority, and otherwise being duly advised in the premises, the Court finds that the motion will be granted in part and denied in part for the reasons that follow.

**I.**     **BACKGROUND**

This cases arises from an employer/employee relationship, whereby Plaintiff worked as a business development manager for nine years with ESAB.[1] Although it is unclear from Plaintiff's complaint what type of business is involved, Plaintiff alleges that he suffers from manganese toxicity, which he contends he contracted while working at ESAB.

Plaintiff filed his Complaint in state court on or about September 20, 2022 [5-1], which Defendants timely removed to this Court on November 16, 2022 based on both diversity and federal question jurisdiction. [1]. In the Complaint, Plaintiff alleges the following causes of action:

---

[1] Plaintiff alleges in his EEOC Charge that he worked for ESAB Cutting and Welding (a Colfax Corporation company) as an account executive. [1-2] at p. 1.

1) Battery and Intentional Infliction of Emotional Distress (related to alleged manganese toxicity exposure) [5-1] at ¶ 18;

2) Bad Faith, Breach of Contract and Breach of Duty of Good Faith and Fair Dealing (related to allegedly being denied workers' compensation and short-term disability benefits) [5-1] at ¶ 19;

3) Wrongful Discharge (related to alleged termination in violation of public policy for allegedly reporting executives involved in theft/embezzlement) [5-1] at ¶ 20;

4) Intentional Infliction of Emotional Distress, Slander and Defamation (related to alleged statements Defendants made to Plaintiff's physician) [5-1] at ¶ 21;

5) Unspecified "whistleblower" claim (related to Plaintiff allegedly reporting safety concerns about manganese toxicity) [5-1] at ¶ 22;

6) Intentional Interference with Employment Relationship against Enovis' predecessor (COLFAX) (related to allegedly setting in motion Plaintiff's termination from ESAB) [5-1] at ¶ 23;

7) Intentional Infliction of Emotional Distress (general allegation) [5-1] at ¶ 24; and

8) Title VII claims for religious discrimination, disability discrimination and retaliation [5-1] at ¶ 25.

Defendants now move for partial dismissal on all but the wrongful discharge (*McArn*) claim. In response, Plaintiff concedes that the statute of limitations bars his claims for battery and slander/defamation. Plaintiff further concedes his claim for religious discrimination.[2] Therefore, those particular claims will be dismissed. As for the other claims Defendants urge the Court to dismiss, the Court will address each in turn.

---

[2] Plaintiff also concedes his "age discrimination" claim; however, such claim was never pled even though it is "checked off" on his EEOC Charge of Discrimination Form. *See* [1-2] at p. 1.

## II. DISCUSSION

### A. Legal Standard

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.

First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for

3

the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed. App'x 466, 470 (5th Cir. 2009) (citation omitted).

### B. Analysis

In addition to those claims that Plaintiff affirmatively conceded and have been dismissed, the breach of contract claims and retaliation claim also readily warrant dismissal. The Court will then analyze the sufficiency of the pleading for the claims of intentional infliction of emotional distress, tortious interference with a contract, and disability discrimination.

### 1. Claims for bad faith, breach of contract and breach of the duty of good faith and fair dealing

First, Defendants moved to dismiss the bad faith, breach of contract and breach of the duty of good faith and fair dealing claims related to allegedly being denied workers' compensation and short-term disability benefits because Defendants contend that there is no contract between the parties concerning workers' compensation insurance or short-term disability insurance and Plaintiff failed to exhaust his administrative remedies as to his claims related to workers' compensation benefits. [6] at p. 11-14. In his opposition brief, Plaintiff wholly failed to respond to these arguments. Accordingly, Plaintiff has waived his opposition. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); *Hagan v. Jackson,* No. 1:13CV268-HSO-RHW, 2014 WL 4914801 (S.D. Miss. Sept. 30, 2014). In other words, his failure to pursue these claims beyond the Complaint constituted abandonment. *See Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001).

Aside from the waiver issue, the Court finds that Defendant's arguments in this regard have merit. In his Complaint, Plaintiff alleged the following:

> The Defendants, in bad faith, undertook a course of action to deny claims made by Brown for workers' compensation and short-term disability. This bad faith involved mis-reporting Brown's claims in an effort to prevent investigation and inquiry into Brown's claims of manganese toxicity. Defendants are therefore liable to Brown for the bad faith denial of Brown's claims, breach of contract, and the breach of the duty of good faith and fair dealing.

[5-1] at ¶ 19.

To set forth a breach of contract claim, a claimant must prove "(1) the existence of a valid and binding contract and (2) that the defendant has broken, or breached it." *Montera v. State Farm Fire and Casualty Co.*, 561 F. Supp. 3d 684, 690 (S.D. Miss. 2021) (quoting *Bus. Commc'ns., Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012)).  Insurance policies are contracts that can be enforced through a breach of contract action. *Id*. However, a person or entity cannot be held liable for breach of an insurance contract that it was not a party to. *See, e.g., Rogers v. Nationwide Property and Cas. Ins. Co.*, 433 F. Supp. 2d 772 (S.D. Miss. 2006) (holding that a breach of contract claim could not be sustained against the broker who sold, but was not a party, to the insurance policy alleged to have been breached). Likewise, "the duty of good faith and fair dealing arises from the existence of a contract between the parties." *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196 (Miss. 2001). As such, like the underlying claim for breach of contract, a claim of breach of the duty of good faith and fair dealing or bad faith cannot be asserted against a non- party to the contract. *Id*. (dismissing claims of breach of the duty of good faith and fair dealing against non-parties to the contract from which the duties were alleged to arise); *see also Rogers*, 433 F. Supp. 2d at 776 ("it is clear that an agent, as a non-party to the contract, has no implied duty of good-faith and fair-dealing with regard to the performance of the contract and thus, cannot be liable under a bad-faith theory of recovery.")

In Paragraph 19, Plaintiff does not allege that Defendants were parties to either the workers' compensation or short-term disability insurance contracts. Simply because certain policies may relate to his employment, such policies do not automatically establish a contractual relationship between Plaintiff and Defendants. Plaintiff has not alleged the existence of any contract between the parties, and therefore there can be no breach of contract claim and related claims of bad faith or breach of good faith and fair dealing upon which relief may be granted. Therefore, Plaintiff's claims of bad faith, breach of contract, and breach of the duty of good faith and fair dealing claims will be dismissed.[3]

### 2. Retaliation claim

The same fate is true for Plaintiff's Title VII retaliation claim. Plaintiff wholly failed to respond to Defendant's argument regarding stating a claim for retaliation. Plaintiff may have chosen to do so because he is not advancing a retaliation claim, which appears to be the case. As Defendant points out, for his Title VII retaliation and discrimination claims, Plaintiff simply incorporates by reference the claims alleged against the Defendants in his June 9, 2021 EEOC Charge of Discrimination (the "Charge"). *See* [5-1] at ¶ 25. Although in the Charge Plaintiff checks the box for retaliation, in his Complaint, he states only that he "brings his claim for religious and disability-based discrimination [as] alleged in his charge of discrimination."

Notwithstanding, the retaliation claim set forth in Plaintiff's EEOC Charge is not protected by Title VII. In the Charge, Plaintiff states, "I also believe that the company has retaliated against me due to my exposure and my reporting of my exposure to manganese toxicity related to my job duties." [1-2] at p. 2. These allegations do not appear in the Complaint; however, if they did, neither his exposure nor his reporting of any exposure to manganese

---

[3] Plaintiff also fails to allege that he has exhausted his administrative remedies before the Mississippi Workers' Compensation Commission, which, under Mississippi law, is a requirement prior to filing suit. *See Dial v. Hartford*

toxicity constitute protected activity under Title VII, and thus, would not be covered by its anti-retaliation provisions. *See, e.g., Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) ("We have interpreted Title VII's opposition clause to mean that a plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violated Title VII."). Therefore, any retaliation claim will be dismissed.

### 3. Intentional Infliction of Emotional Distress

Defendant argues that the intentional infliction of emotional distress claims ("IIED")[4] must be dismissed because such claims are precluded by the Mississippi Workers' Compensation Act ("MWCA") and because Plaintiff fails to sufficiently state a claim. Plaintiff responds that such claims require an intent to injure, which removes such claims from the auspices of the MWCA and that the damages sought are not compensable under the MWCA.

*In Newell v. Southern Jitney Jungle Co.*, the Mississippi Supreme Court addressed *Miller v. McRae's, Inc.*, 444 So. 2d 368 (Miss. 1984), and stated that "the *only* test articulated in *Miller* is whether the injury is compensable under the act." 830 So. 2d. 621, 624 (Miss. 2002). In *Miller*, the court specifically stated, "Where exclusivity of remedy is involved one must ask not only whether the injury arose out of and in the course of employment, but also, whether the injury is compensable under the Workmen's Compensation Act. Obviously, if the injury is not compensable under the Act, the Act does not provide the exclusive remedy." *Miller*, 444 So. 2d at 372.

In reference to that particular statement the Supreme Court in *Miller* cited to *Moore v. Federal Dept. Stores, Inc.*, 190 N.W.2d 262 (1971) and noted that in that case, the "Michigan Court of Appeals held that the type of injuries a plaintiff sustains as the result of a false

---

*Acc. and Indem. Co.*, 863 F.2d 15 (5th Cir. 1989); *Whitehead v. Zurich Am. Ins. Co.*, 348 F.3d 478 (Miss. 2003).
[4] Plaintiff appears to assert three different claims for IIED. *See* [1] at ¶¶ 18, 21 and 24.

imprisonment (humiliation, embarrassment, and deprivation of personal liberty) were not compensable under the Michigan Worker's Compensation Act. The Court then held that in order to prevent the suffering of a wrong without a remedy, it must allow a common law tort action." *Id*. at 372 n.2.

Here, Plaintiff is not seeking damages from Defendants for the mere exposure to whatever harmful substances caused his alleged manganese toxicity and does not allege that the Defendants' only intentional acts were simply knowing and not doing anything, which appears to be the case in *Bowden v. Young*, 120 So. 3d 971 (Miss. 2013) (alleging intentional infliction of emotional distress for exposure to toxic mold). Here, Plaintiff is seeking emotional distress damages based on a host of allegations of intentional acts, some of which fell within the scope of employment while others are alleged to have not. At this stage, the Court must accept all well pled allegations of the Complaint as true. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).

Plaintiff alleges that in December 2020 he reported to his supervisor he was suffering from manganese toxicity. [5-1] at ¶ 6. Defendants were aware that their products caused health issues but made no effort to protect or warn Plaintiff. *Id.* He also reported a significant seven-figure theft from the company by an executive and met with the FBI about this alleged theft. [5-1] at ¶¶ 7, 9. Company executives told Plaintiff they would place him on paid leave and investigate the theft and help him find a doctor for the manganese toxicity. [5-1] at ¶ 8. He waited for months to be sent to a doctor. [5-1] at ¶ 10. Eventually, Defendants offered to send Plaintiff to a doctor in Mobile, Alabama for psychological testing. When Plaintiff questioned how such testing was related to his manganese toxicity, Defendants stated they were not aware of any manganese toxicity claim. [5-1] at ¶ 11. In April of 2021, Plaintiff underwent the psychological testing, which he passed with no

red flags, and the doctor reported he could return to work in 30 days. However, Plaintiff still wanted to see the proper doctor, and Defendants stopped paying him while on leave. [5-1] at ¶ 12. In response to the doctor's indication that Plaintiff could report to work, Defendants reported that Plaintiff was a violent individual and had hired investigators to follow and watch him. *Id*. The doctor, who found no signs that Plaintiff was violent refused to alter his report. *Id.* Plaintiff felt that Defendants were trying to attack his character and mental capacity after his report of the criminal theft and safety issue within the company. *Id.*

Because Defendants were not allowing Plaintiff to return to work, he filed a workers' compensation claim based upon manganese toxicity. [5-1] at ¶ 13. The claim was denied because Defendants intentionally misreported the claim as one for emotional trauma and not manganese toxicity. *Id*. Plaintiff was not made aware of any appeal rights or his ability to question the denied claim. *Id*. Then without warning, presumably from influence by the Defendants, the doctor in Mobile altered his original report and recommended Plaintiff see another psychiatrist within 90 days before returning to work, which he did, yet Defendant would not allow Plaintiff to return. [5-1] at ¶ 14. In November 2021 Plaintiff was officially terminated for allegedly refusing to work, despite repeated requests to return to work. [5-1] at ¶ 16.

The Court finds that the emotional injuries Plaintiff seeks from his exposure to the harm that caused his alleged manganese toxicity ([5-1] at ¶ 18) are the type of injury, like in the *Bowden* case, that would be precluded by the MWCA. His next IIEDs claim arises from Defendants' alleged slander and defamation, the hiring of investigators to intimidate and scare him, making false reports to the doctor to harm his character and reputation, as well as making false representations to others to cause them to deny his various claims. [5-1] at ¶ 21. Additionally, Plaintiff alleges IIED because Defendants sought to punish and inflict harm on

Plaintiff for his "attempts to follow the law and protect the public and shareholders from harm." [5-1] at ¶ 24. The emotional damages arising from these alleged sequences of events are not the sort compensable under the MWCA. However that is not the end of the inquiry.

As for the sufficiency of the claims, to set forth a *prima facie* claim for IIED, a Mississippi plaintiff must show that (i) the defendants acted "willfully and wantonly" towards them, (ii) that the defendants actions would "evoke outrage or revulsion in civilized society", (iii) that the actions were "directed at or intended to cause harm" to the defendant, (iv) that the defendant "suffered severe emotional distress as the direct result" of defendant's actions and (v) that the "resulting emotional distress was foreseeable from the intentional act/acts." *J. R. ex rel. R.R. v. Malley*, 62 So.3d 902, 906 (Miss. 2011). Defendants argue that, even taking Plaintiff's allegations as true, they fall woefully short of alleging the requisite level of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 652 (S.D. Miss. 2013).

At this stage, which is not summary judgment as a matter of law on the issue but rather a motion to dismiss, the Court finds that the allegations when taken together as a whole are sufficient to state a claim. Subjecting your employee to unnecessary psychological testing, making false reports as to his character, having him followed to intimidate him, stopping payment when on paid leave, and providing false information so that claims are denied may very well be sufficiently outrageous to intentionally inflict emotional distress on someone. Regardless, the Court is unwilling to find that Plaintiff has wholly failed to state a claim.[5] As such, because the claim for IIED based on Plaintiff's

---

[5] This ruling in no way affects either party's ability to file a dispositive motion if after discovery, a party finds the undisputed facts warrant a summary judgment.

exposure to the harm that caused his alleged manganese toxicity is barred by the MWCA, the motion is granted in that regard. As for the other two claims of IIED, the motion is denied.

### 4. Tortious Interference with Employment against Enovis/Colfax

To establish a claim of tortious interference with employment in Mississippi a Plaintiff must prove "(1) the acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in his lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which acts constitute malice; and (4) actual damage or loss resulted." *McClinton v. Delta Pride Catfish, Inc.,* 792 So. 2d 968, 976 (Miss. 2001). A claim of tortious interference with an employment relationship can only be pursued where the "wrongdoer is a stranger to the contract which was interfered with – an outsider." *Gulf Coast Hospice, LLC v. LHC Group, Inc.*, 273 So. 3d 721, 745 (Miss. 2019) (citing *Cenac v. Murry*, 609 So. 2d 1257, 1279 (Miss. 1992)).

Plaintiff's allegations are incongruous in this regard. On the one hand, Plaintiff asserts all of the same allegations and claims against Enovis/Colfax that he has against ESAB related to his employment with ESAB, with the specific allegations that Enovis/Colfax was the parent company who controlled the actions of ESAB (at least to some degree) and that for all the claims "it is believed that the Defendants have acted in concert as joint employers and/or an integrated enterprise." [5-1] at ¶¶ 4, 17. Plaintiff fails, for the most part, to differentiate which Defendant took which action, although Plaintiff does that it was specifically Enovis/Colfax who placed him on leave. *Id.* at ¶ 8. On the other hand, Plaintiff wants to allege that Enovis/Colfax tortiously interfered with Plaintiff's employment relationship with ESAB, which is not possible in the context of a joint employer, who is not a stranger to the relationship.

Taking the allegations of the Complaint as a whole, the Court finds that Plaintiff has failed to state a claim for tortious interference with employment, and this claim will be dismissed.

### 5. Disability Discrimination

As noted previously, for his disability discrimination claim, Plaintiff simply incorporates by reference the claims alleged against the Defendants in his June 9, 2021 EEOC Charge. *See* [5-1] at ¶ 25. Defendants argue that Plaintiff's Complaint does not meet the requirements to establish an actual disability claim or a "regarded as" claim under the American with Disabilities Act (ADA).

Under the ADA, actually having a disability and being "regarded as" disabled are mutually exclusive. *See Kemp v. Holder*, 610 F.3d 231, 236-37 (5th Cir. 2010). Plaintiff seems to allege both. Plaintiff argues that he does not know if the Defendants believed he was disabled, or merely "regarded" him as disabled and impaired because of the manganese toxicity issues. Either way, his claims fail.

To allege a proper prima facie case for disability discrimination for an actual disability under the ADA, Plaintiff must show that (1) he had a disability within the meaning of the ADA, (2) he was qualified and able to perform the essential functions of the job, and (3) he suffered an adverse employment action because of his disability. *See Kemp v. Holder*, 610 F.3d 231, 236 (5th Cir. 2010). In Paragraph 25, Plaintiff alleges that the "Defendants created Brown's disability related to manganese toxicity, and then the Defendants refused to provide any accommodation to Brown, culminating at least in part with Brown's termination. Defendants would not even talk to Brown and attempt to provide any accommodations." However, earlier he makes the clear allegation that he was "terminated for reporting criminal acts [theft/embezzlement] to the

company"[6] and that the "Defendants knew that Brown would not be able to work in the same industry or in the same capacity following his termination and in light of the Manganese toxicity." [5-1] at ¶ 20.

Alternative pleading typically relies on the same set of facts to allege alternative theories of recovery, i.e., different causes of action. Here, we have alternative sets of facts—either he was terminated because of his reporting criminal acts or he was terminated because of his disability. Notwithstanding, those alternative facts are not what is fatal to the disability claim. Plaintiff fails to allege what manganese toxicity is, what the essential functions of his job were, and how he was qualified and able to perform the essential functions of the job with either his disability or with a reasonable accommodation. The allegations in Paragraph 20 seem to undermine such a requirement.[7] Therefore, the Court finds that Plaintiff has failed to state a claim, and the disability discrimination claim will be dismissed.

### 6. Unspecified Whistleblower Claim

Finally, in Paragraph 22, Plaintiff alleges that Defendants terminated his employment because he is a whistleblower, having allegedly reported safety concerns to Defendants about manganese toxicity caused by their allegedly toxic products. However, as Defendants point out, Plaintiff does not cite to any local, state or federal whistleblower law that provides him with a cause of action for reporting safety concerns. While Mississippi recognizes a very limited public policy exception to employment at-will, that exception applies only to a refusal by an employee to participate in an illegal act or an employee who reports an illegal act. *See McArn*

---

[6] In Paragraph 22 of the Complaint, Plaintiff alleges that the Defendants terminated him because he is a "whistleblower." [5-1] at ¶ 22.

[7] Plaintiff offered no argument in response to Defendants' arguments for dismissal for any "regarded as" claim. As such, both theories will be dismissed.

*v. Allied Bruce-Terminix Co., Inc.,* 626 So.2d 603, 607 (Miss. 1993).[8] It does not extend to reporting safety violations or violations of safety regulations. *See Howell v. Operations Management Int'l, Inc.*, 161 F. Supp. 2d 713 (E.D. Miss. 2001), aff'd 77 Fed. App'x. 248 (5th Cir. 2003).

In response, Plaintiff argues that his "reports and complaints of manganese toxicity fall under the Toxic Substance Control Act and state law for assault and/or battery." [13] at p. 17. However, Plaintiff's Complaint is devoid of any allegation that his claimed whistleblower rights arise from "Toxic Substance Control Act" nor does he cite this as a basis for federal question jurisdiction. Rather, Plaintiff alleges only that the Defendants have caused substantial harm to the public the state has a "strong public interest in protecting people for reporting safety concerns." [5-1] at ¶ 22.  This is insufficient to state a claim as a matter of law under the *McArn* exception. As such, this claim, too, will be dismissed.

### III.   CONCLUSION

Based on the foregoing, it is hereby ORDERED that Defendants' Motion to Dismiss [5] is GRANTED IN PART as follows:

1) The claims for battery and intentional infliction of emotional distress (related to alleged manganese toxicity exposure) are dismissed;

2) The slander/defamation claims are dismissed;

3) The claims for bad faith, breach of contract, and breach of the duty of good faith and fair dealing are dismissed;

4) All Title VII claims (age, religious, disability, retaliation) are dismissed;

---

[8] Again, Defendants do not seek dismissal of any *McArn* claim.

14

5) The unspecified "whistleblower" claim (related to Plaintiff allegedly reporting safety concerns about manganese toxicity) is dismissed; and

6) The tortious interference with employment relationship claim against Enovis/Colfax is dismissed.

   In all other respects, the motion is DENIED.

SO ORDERED AND ADJUDGED this 27th day of March 2023.

                                  /s/ Keith Starrett
                                KEITH STARRETT
                                UNITED STATES DISTRICT JUDGE